Filed 12/13/13  D.S. v. County of Los Angeles CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| D.S., a Minor, etc., | B239902 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC449291) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed in part and reversed in part.

Law Office of Adrienne Quarry and Adrienne Quarry for Plaintiff and Appellant.

Seki, Nichimura & Watase, Gilbert N. Nishimura, Andrew C. Pongracz and Corinne D. Orquiola for Defendants and Respondents.

_____

Juana L, as guardian ad litem on behalf of her minor daughter plaintiff and appellant D.S., appeals from a judgment following a jury trial in favor of defendants and respondents County of Los Angeles, Los Angeles County Sheriff's Department, Deputy Lucia Chavez (erroneously sued as Daphne Chavez), and Sheriff Leroy Baca (collectively the County) in this excessive force case. Juana L. contends the trial court: (1) erred by excluding evidence, including the sheriff's department's response to a suspected child abuse report a few days after the incident; (2) erred by failing to read the parties' stipulated facts to the jury; and (3) erred by bifurcating her negligence claim, to be tried only if the jury found unreasonable or excessive force had been used. We find no abuse of discretion in the exclusion of evidence and no harm in the failure to read the stipulation to the jury. However, we conclude the cause of action for negligence was not necessarily decided by the jury's findings on excessive force and battery. Therefore, we reverse the judgment in favor of the County as to the negligence cause of action and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

### Response to 911 Call

D.S. developed mental health issues at age 13. She began psychiatric medication and treatment with therapist Manuela Siriaco. On the evening of September 10, 2009, when she was 15 years old, she threw a plate of food. Juana L. called 911 for assistance. Chavez, as well as Deputies Daniel Anderson, Christopher Roberts and two others, responded to the home. Sergeant Maricela Long arrived later.

D.S. was in the bathroom. Juana L. told Chavez that her daughter had mental health issues. Chavez knocked on the door and talked to her. D.S. eventually came out of the bathroom and appeared calm. Chavez and Roberts escorted D.S. into the bedroom across the hallway.

2

Chavez asked questions about D.S.'s mental health issues. D.S. became upset and started yelling. Chavez used the police radio to indicate to other deputies that the situation was safe. In the background of the recorded radio broadcast, D.S. can be heard grunting, cursing, yelling desperately for her brother E.'s help, and shouting "Get off me!"

Chavez handcuffed D.S. Chavez instructed her to put her hands behind her back. D.S. complied without any resistance. Chavez did not have to use any part of her body to restrain D.S. at any time, other than her hands to put on the handcuffs. At some point, D.S. began crying.

Juana L. heard D.S. screaming and was concerned about her daughter. She ran outside the house to try to see what was happening in the bedroom. She called Siriaco, hoping she would explain D.S.'s illness to the deputies in English.

Chavez and Roberts escorted D.S. out of the bedroom and into a patrol car. Chavez had a hand on D.S. to guide her to the car. D.S. began kicking at the window and door of the patrol car. She was spitting at the deputies. Long directed deputies to place a mesh cover over D.S.'s head to prevent spitting. No force was used to put on the cover.

Chavez and Anderson took D.S. to UCLA Harbor Hospital's psychiatric emergency room. One of the deputies told a nurse that D.S. required a 72-hour psychiatric hold for treatment and evaluation. Chavez returned to the home and told Juana L. that her daughter was at the facility.

A deputy must make a report when he or she uses force, including reasonable force to gain control of a person who is resisting an officer. Chavez did not make any report in this case, because she did not have to take any action that rose to the level of reportable force. No deputy observed or reported any use of force.

On March 8, 2010, Juana L. filed a government claim for damages on behalf of D.S. Chavez learned at that point that D.S. claimed Chavez used excessive force.

3

## Complaint and Trial

Juana L. filed a complaint on D.S.'s behalf against the County. She filed an amended complaint on February 7, 2011, alleging causes of action for unreasonable detention, excessive force, municipal and supervisory liability, false arrest, battery, negligence, and violation of Civil Code section 51.7. The complaint also sought punitive damages. The complaint alleged that the sheriff's department has specially trained officers who can respond to calls involving people with mental illness. Rather than call the mental health team, the deputies yanked D.S. out of the bathroom, punched her twice in the face when she protested, pushed her into the bedroom in a chokehold, and shut the door. Later, they placed a bag on her head and stomped on her legs to prevent her from moving.

The cause of action for negligence alleged, in pertinent part, that the County acted negligently by: failing to properly assess the need to detain, arrest, and use force against D.S.; failing to monitor and record any use of force by deputies; failing to monitor and record any injuries caused by use of force in their tactics and handling of the situation; failing to properly train and supervise employees; failing to ensure adequate numbers of employees with appropriate education and training were available; failing to provide prompt medical care to D.S.; and failing as to their handling of evidence and witnesses.

Prior to trial, the County brought two motions in limine. The first was to exclude evidence of a child abuse report and investigation on September 14, 2009. An incident report for September 14, 2009, reflected the sheriff's department received a report from an unknown declarant that D.S. was "roughed up" by officers from Inglewood Police Department. The County argued that both the child abuse report and the incident report were hearsay. After a diligent search, the County was not aware of a written report of suspected child abuse made in September 2009, as to D.S. The County noted that D.S. was in the hospital on September 14, 2009. The County argued that not only would the evidence of a report and investigation on September 14, 2009, consume undue time with

4

a mini-trial, but there was a substantial danger of undue prejudice because the jury could mistakenly think the investigation resulted from the September 10, 2009 incident.

The County's attorney attached his declaration. During the course of discovery, he learned that two deputies, who are not parties to the lawsuit, may have responded to the house while D.S. was in the hospital. The only evidence of the visit was the incident report, which was hearsay.

In opposition to the motion, D.S.'s attorney declared that Siriaco contacted the Department of Child and Family Services (DCFS) on September 12, 2009, to report suspected child abuse related to the incident on September 10, 2009. Counsel attached Siriaco's signed note stating she had contacted DCFS and filed a child abuse report.

D.S.'s attorney attached the correct incident report for September 14, 2009, which she argued was admissible as a business record and a party admission. The report lists a child abuse report number and D.S.'s address. It states that a child, D.S., who has mental issues, was roughed up by officers from Inglewood Police Department and the child was taken to UCLA Harbor Hospital for a 72-hour evaluation. The incident report reflects the call was assigned to Chavez and Anderson. Deputies Booth and Dowdy were assigned to assist.

Deputy Sandoval was deposed as the person most knowledgeable about the investigation into the report on September 14, 2009. The DCFS sends child abuse reports to the sheriff's department stations based on the address of the incident. Sandoval had an independent recollection of the incident, because of the horrendous screaming heard over the radio and the connection made to the Inglewood Police Department. He does not recall whether Chavez's name was in the child abuse report or whether he spoke to Chavez. Sandoval relied on the information in the incident report as part of his investigation. Sandoval had a station file number for the report, which was different from the child abuse report number on the incident report and is not listed on the incident report. He asked a secretary to pull up the file associated with the station file number, so that he could review the child abuse report. The secretary found nothing had been scanned.

5

Chavez acknowledged in deposition that the incident report showed she responded to a report of child abuse on September 14, 2009. She had not recognized D.S.'s name when it appeared on her screen. The incident report is incorrect. Although the report says the call was assigned to Chavez and Anderson, with assistance from Booth and Dowdy, it was the reverse. Booth and Dowdy were assigned to investigate the call, while Chavez was assigned to assist. She responded to the location. When she arrived, she realized that she had been there previously. She does not remember if she told Booth and Dowdy that she had been at the location previously. Booth and Dowdy took over the call, so Chavez and Anderson left.

The County's second motion in limine was to bifurcate the cause of action for municipal and supervisory liability under section 1983 of title 42 of the United States Code. The County argued the cause of action was based on the allegation that Chavez's superiors ratified her use of excessive force and would require evidence of sheriff's department policies and procedures or follow-up investigation. If the County's version of events was believed by the jury with respect to the causes of action for excessive force, battery, and false arrest, then there would be no need for the evidence and argument concerning ratification.

D.S.'s attorney opposed the motion in limine, stating that she could establish municipal liability by showing the sheriff's department had a policy that permitted officers to use excessive force to take mentally ill individuals into custody, the sheriff's department failed to train officers to handle the usual situations they encountered, namely involving mentally ill individuals, or a policymaker for the sheriff's department ratified the unconstitutional actions of the deputies. Counsel argued the evidence to establish municipal liability was essentially the same as for the claims of excessive force, battery, and negligence. Therefore, the evidence would be admissible at trial, even if the municipal liability claim was bifurcated.

A hearing was held on October 3, 2011. D.S.'s attorney argued that evidence of a suspected child abuse report and investigation on September 14, 2009, was relevant to the claim of municipal liability for ratification, as well as the claim for punitive damages.

6

Counsel stated that her police practices expert would testify that the incident report was generated when a dispatch employee for the sheriff's department initiated a message to investigate the report. The County's attorney stated that Booth and Dowdy, who responded and cleared the call, did not have an independent recollection of the event. However, the clearance code printed at the bottom of the incident report showed no one was home and they left.

D.S.'s attorney explained that she had requested the child abuse report in discovery, but the County did not have it. Counsel requested and received a copy of the report from DCFS. However, the report could not be distributed without permission, which she was petitioning for in the juvenile court.

The trial court concluded that the investigation was relevant to a separate and distinct theory of municipal liability. Therefore, the court was inclined to bifurcate the cause of action for municipal and supervisory liability. D.S.'s attorney argued the same witnesses would need to be called in both phases. For example, the police practices expert would testify about training and customs to establish whether the officers acted reasonably as part of the negligence claim. The training was a relevant factor in determining whether the deputies' conduct was reasonable. Counsel also argued that the events on September 14, 2009, suggested Chavez had covered up her acts, which was evidence that she did something wrong in the first place. The court continued the hearing.

At a hearing on October 11, 2011, D.S.'s attorney dismissed D.S.'s cause of action for municipal and supervisory liability. The trial court, on its own motion, ordered the issues of negligence and punitive damages bifurcated for trial in a second phase, if at all. The court concluded that any egregious conduct in the days following the incident was relevant to the claims for punitive damages or negligence.

D.S.'s attorney asked, "Is it an entitlement to punitive damages that's tried in the first phase?" The trial court responded, "No. The way that works, as part of the special verdict form, is whether or not the plaintiff has proved her claims and done so by clear

7

and convincing evidence sufficient to trigger phase two, at which time this other evidence would come in, if required, and that's how I think this case should be tried."

D.S.'s attorney clarified that the trial court was raising bifurcation of negligence and punitive damages on its own motion and it had not been raised in the County's briefing. She objected, noting the negligence cause of action was based on the September 10, 2009 incident. The court reviewed the broad negligence allegations of the complaint: whether the County failed to adequately assess the need to detain and arrest, failed to monitor or record the use of force, used proper tactics, provided proper training and supervision, and negligently handled evidence and witnesses. The court found the alleged negligence claims all went to events subsequent to the primary theory of a battery and deprivation of civil rights on September 10, 2009. The court found the negligence cause of action, as stated in the complaint, was very similar to the dismissed cause of action for municipal and supervisory liability.

D.S.'s attorney agreed the negligence cause of action had some allegations in common with the municipal liability claim. However, she argued there were negligence claims as to the events of September 10, 2009, which should be tried in the first phase, including the deputies' response to the situation, which escalated the situation to the point that force was necessary. The court found the negligence issues related to the incident were subsumed in the battery and civil rights causes of action. A standard of care for the treatment of a mentally ill minor by deputies, and any violation of that standard of care would be an issue for phase two, which would go more directly to whether there are punitive damages.

D.S.'s attorney also attempted to clarify the presentation of evidence relevant to punitive damages: "On the punitive damages issue, I think that I would agree it would be a good idea to potentially have the amount of punitive damages decided in a second phase; however, the entitlement to punitive damages should be tried in the first phase. [¶] The jurors are going to decide not just about what happened in that room, but they also have to take into account evidence, including the fact that Deputy Chavez had material omissions that concealed her role and the use of force in this case. [¶] That's vitally

8

important, Your Honor, not just for a finding of punitive damages, but also as a finding of liability as plaintiffs laid out in the supplemental briefing and in their opposition, evidence that a defendant consciously conceals their own involvement in a use of force." The trial court interjected that no conscious concealment was shown by the evidence. D.S.'s attorney argued the incident report reflected Chavez was assigned to investigate the child abuse report. The court doubted that a dispatch employee rose to the supervisory level of assigning the investigation of an event. The incident report simply showed that a dispatcher located Chavez and Anderson on a particular date and sent them to the location. D.S.'s attorney agreed but insisted inferences could be drawn from Chavez's conduct. She was still waiting for a release from the juvenile court. D.S.'s attorney represented that her expert would testify, and common sense also supports, if an investigating officer has information about a child abuse allegation and knows the incident is one where she had personal involvement with the child, the deputy would be expected to speak up and say what she knows about that incident. The expert testimony would be based on the policies of the sheriff's department, as provided by a former lieutenant from the sheriff's department.

The trial court concluded that if there were no excessive force, false arrest, or civil rights deprivation, that was the end of the case. Any concerns about the sheriff department's policies, subsequent investigations, or punitive damages would be moot. The County offered to draft a new verdict form based on the court's ruling.

D.S.'s attorney asked for clarification as to whether the incident report from September 14, 2009, was excluded. The trial court stated the report was excluded from the first phase of trial. The court added, "It may be admissible in phase two[,] if and when we get to a determination of whether a subsequent investigation somehow renders either Deputy Chavez or the County of Los Angeles liable, and maybe that's part of the negligence claim." However, the court noted that D.S.'s expert would need to provide the basis for the County's duty first.

9

The parties filed a written stipulation concerning certain facts and evidence, including the stipulation that "All officers' actions in this case were acting or purporting to act in the performance of their official duties (i.e., 'Under color of law')."

A jury trial began on October 17, 2011. The causes of action remaining to be tried in the first phase were for excessive force in violation of section 1983 of title 42 of the United States Code and battery. D.S.'s attorney renewed her objection to bifurcation and maintained that her negligence claim was not contingent upon finding excessive force or the intentional tort of battery.

During D.S.'s attorney's direct examination, Chavez testified that she first learned D.S. was claiming Chavez used excessive force six months after the incident. Counsel sought to introduce evidence of the events of September 14, 2009, as impeachment showing Chavez had prior knowledge of the allegations against her. The trial court declined to change its prior ruling.

The jury found that no sheriff's department employee used unreasonable or excessive force against D.S. The trial court entered judgment in favor of the County on January 19, 2012. D.S. filed a timely notice of appeal.

## DISCUSSION

### I. Evidentiary Rulings

D.S. contends the trial court erred in excluding or omitting various evidence. We find no abuse of discretion or harm as to each claim.

### A. Standard of Review

"Broadly speaking, an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence." (*People v. Waidla* (2000) 22 Cal.4th 690, 717.) That standard also applies to rulings excluding expert

10

opinion evidence. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1599.) A party challenging a trial court's evidentiary rulings must demonstrate both an abuse of discretion and a consequent miscarriage of justice. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.)

The trial court has broad discretion in ruling under Evidence Code section 352 on the admissibility of evidence and acts within its discretion when excluding cumulative and time consuming evidence. The section 352 weighing process depends on the court's consideration of the facts and issues of the case before it rather than on mechanical, automatic rules. (*Aguayo v. Crompton & Knowles Corp.* (1986) 183 Cal.App.3d 1032, 1038.)

Evidence Code section 354 provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means; [¶] (b) The rulings of the court made compliance with subdivision (a) futile; or [¶] (c) The evidence was sought by questions asked during cross-examination or recross-examination."

A miscarriage of justice should be declared only when the appellate court, after an examination of the entire cause (including the evidence), is of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

**B. Investigation on September 14, 2011**

D.S. contends the trial court abused its discretion by excluding evidence pertaining to the sheriff's department's response on September 14, 2011. We find no abuse of discretion.

11

It was within the trial court's discretion to exclude the child abuse report and the sheriff's department's response on September 14, 2011. The evidence would have consumed substantial time on a tangential issue, including how the child abuse report was received, how responsibility for calls is assigned, and the actions of the responding officers on September 14, 2011. Any inference from the evidence that Chavez covered up her actions on September 10, 2011, would have been slim. Chavez did not remember whether she told the other responding deputies that she had been at the house previously. There was no evidence that she didn't tell them. Juana L. had called 911 for assistance with her daughter on multiple occasions. The report referred to child abuse by the Inglewood Police Department. Chavez would not necessarily have realized from the information provided on the call that she had been accused of using excessive force. It was within the trial court's discretion under Evidence Code section 352 to exclude the time-consuming, inconclusive evidence from the September 14, 2011 investigation, which had the potential to confuse the jury as to the nature of the investigation.

### C. Therapist's Report to DCFS

D.S. contends the trial court abused its discretion by excluding evidence that Siriaco filed a suspected child abuse report immediately after the incident, based on the information that she had from Juana L. Again, we find no abuse of discretion.

Siriaco filed a report a few days after the incident, based on information that she gathered from Juana L. Her report was hearsay. There was no evidence that any deputy who responded to the call on September 14, 2011, saw Siriaco's report. The person most knowledgeable about the investigation tried to review the report, but it had not been copied to the file. We cannot say that it was an abuse of discretion under Evidence Code section 352 to exclude evidence of the therapist's report based on hearsay statements.

### D. Motive to Lie

D.S. contends the trial court abused its discretion by excluding evidence showing the deputies had a motive to lie, namely the consequences of failing to report a use of force. We find no abuse of discretion, however, because D.S.'s attorney elicited this information very clearly in her direct examination of Chavez. Any additional testimony from the deputies about the consequences for failing to promptly report the use of force would have been cumulative.

### E. Prior Excessive Force Complaints

D.S. additionally contends the trial court should have permitted her to examine Chavez about other excessive force complaints against her. We find no abuse of discretion. The other complaints would have consumed undue time and had a very high potential for prejudice and confusion of the issues for the jury. There is also no showing that the complaints were particularly similar to the instant case.

### F. Evidence Supporting Punitive Damages

D.S. contends the trial court improperly excluded all evidence relevant to the issue of punitive damages until the second phase of the trial. The record reflects, however, that the court explained the findings necessary in the first phase, which could potentially trigger a second phase. The court's surprise bifurcation ruling caused confusion and D.S.'s attorney attempted to clarify the court's ruling. However, no harm has been shown as a result. The only evidence that D.S. complains was excluded as a result of the court's ruling is the investigation conducted on September 14, 2011. We have already determined above that it was not an abuse of discretion to exclude this evidence.

13

### G. Stipulation

D.S. contends the trial court failed to provide the parties' stipulation that the deputies were acting under color of law to the jury. We conclude any error was harmless. There was no doubt from the evidence or the parties' arguments the deputies were acting in the course of their employment and under color of law. The issues was never in question, and the jury could not have been confused.

## II. Bifurcation of Trial

D.S. contends the trial court abused its discretion by ordering bifurcation of her negligence claim to be tried in a second phase if the jury found the deputies used excessive force or intentionally battered D.S. We agree that bifurcation of the negligence cause of action was not appropriate.

It is within the trial court's discretion to order issues bifurcated or separate trials of causes of action, and to determine the order in which issues are decided. (*Royal Surplus Lines Ins. Co., Inc. v. Ranger Ins. Co.* (2002) 100 Cal.App.4th 193, 205.) "Whether there shall be a severance and separate trials on issues in a single action is a matter within the discretion of the trial court, whose ruling will not be disturbed on appeal absent a manifest abuse of discretion. [Citation.]" (*Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1086.) As explained above, we may not reverse the judgment on appeal "for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

"Under general negligence principles, of course, a person ordinarily is obligated to exercise due care in his or her own actions so as to not to create an unreasonable risk of injury to others, and this legal duty generally is owed to the class of persons who it is reasonably foreseeable may be injured as the result of the actor's conduct. (Civ. Code,

14

§ 1714; see generally Rest.2d Torts, § 281; Prosser & Keeton on Torts (5th ed. 1984) § 31, p. 169; 3 Harper et al., The Law of Torts (2d ed. 1986) § 18.2, pp. 654-655.) It is well established, moreover, that one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct (including the reasonably foreseeable negligent conduct) of a third person. [Citations.]" (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 716, fn. omitted.)

"[L]aw enforcement personnel do not acquire a duty of care toward a citizen by responding to a request for assistance or undertaking an investigation. [Citation.] To create a special relationship and a duty of care, there must be evidence that the police 'made misrepresentations that induced a citizen's detrimental reliance [citation], placed a citizen in harm's way [citations], or lulled a citizen into a false sense of security and then withdrew essential safety precautions.' [Citation.]" (*Camp v. State of California* (2010) 184 Cal.App.4th 967, 978.)

In this case, the negligence action was not dependent on finding a use of excessive force or an intentional battery. D.S. claimed the deputies who responded to the call negligently mishandled the confrontation with her, causing the situation to escalate. The sheriff's department has a mental health team that can respond to calls involving mental illness, but the deputies chose not to call the mental health team. It was undisputed that Chavez's remarks to D.S. about her mental health led to Chavez finding it necessary to place the teenage girl in handcuffs. Chavez's actions did not have to constitute excessive force or intentional battery to have been negligent. The cause of action for negligence was not dependent on finding the use of excessive force or an intentional battery.

15

## DISPOSITION

The judgment is reversed as to the cause of action for negligence, and in all other respects, the judgment is affirmed.  Appellant D.S. is awarded her costs on appeal.


KRIEGLER, J.


We concur:


MOSK, Acting P. J.


KUMAR, J.*

---

\*      Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.